Hitchcock, J.
This case is one of importance, as, in order to its decision, it is necessary to give a construction to the act of February 26, 1840, “providing for the collection of claims against steamboats and other'water-crafts, and authorizing proceeding against the same by name.” This law gives a lien upon such crafts for certain claims against them. Its object is, on the whole, a beneficial one, and if possible should be carried into effect. Had the law merely declared the lien, and authorized the commencement of suit against the owners or officers, by warrant or attachment levied upon the boat or craft, there could have been little or no difficulty. Such, however, is not the case, and as the law now stands, there does appear to be some incongruity in its various provisions. These will be noted as we proceed with the case.
The original action was against the steamboat Monarch, byname, and judgment was rendered in favor of the plaintiff. It is sought to reverse this judgment for error, and the first error assigned is, that the declaration is insufficient. The declaration is in assumpsit, and contains the common counts. It is in common form and 387] not defective in substance. The*only objection to it is, that the defendant is an inanimate thing, that could neither assume nor promise. In this respect it is defective, unless the statute already referred to justifies such mode of pleading. If the statute authorizes it, we are undoubtedly bound to sustain it. Let us then examine this statute.
In its title, it is called “ an act providing for the collection of ■claims against steamboats and other water crafts, and authorizing proceedings against them by name." Although the title to a statute constitutes no part of the law, yet it may well be considered in its .construction as furnishing an index by which doubtful matters in *388 the body of a statute may be settled. Especially is this proper where, as in this state, the title is prefixed by a solemn vote of the legislature passing the law. ' From this title it is manifest that the legislature supposed the act authorized proceedings against a steamboat or other water-craft by name.
Section 1 of the act provides “that steamboats and ofher water-crafts navigating the waters within or bordering on this state, shall be liable for debts contracted on account thereof, by the master, owner, steward, consignee, or other agent, for materials, supplies, or labor, in the building, repairing, furnishing, or equipping the same, or due for’wharfage; and also for damages arising out of any contract for the transportation of goods or persons, or for injuries done to persons or property by such craft; or for any damage or injury done by the captain, mate, or other officer thereof, or by any person under the order or sanction of either of them, to any person who may be a passenger or hand on such steamboat or other water-craft, at the time of the infliction of such damage or injury.”
From this section it will be seen that a steamboat is liable, not only on account of contracts, but for torts, and may well, in a proper case, be charged for an assault and battery committed by one of her officers, as in assumpsit for supplies, materials, or labor furnished in her construction or repair. This, however, can make no difference as to the form of pleading.
*In section 2 it is provided that “any person having such [888 demand may proceed against the owner or owners, or master of such craft, or against the craft itself.” In the next section it is provided that “ when suit shall be commenced against the craft, the plaintiff shall file his precipe to that effect, naming said craft, if she have a name, and if not, giving a substantial desm^tion of the same ; and with it a bill of particulars of his demand, verified by his own affidavit, or that of his agent or attorney, or other creditable witness.”
Taking these two sections together, there can be no doubt that it was the intention of the legislature that a person having either of the claims specified in section 1 of the act, might at his election proceed either against the craft itself, or against its owner. In fact, it is so expressly declared in section 2; and in the third, the steps to be pursued in order to obtain process, where the plaintiff elects to proceed against “ the craft itself,” are pointed out.
*389 The same intention is manifest in section 4, in which the duty of the clerk, after a precipe shall have been filed, is prescribed. He shall “issue a warrant, returnable as other writs, directing the seizure of such craft by name or description as provided for in section 3 of this act, or such part of her apparel and furniture as may be necessary to satisfy the demand, and to detain the same until discharged by due course of law.”
It is then made the duty of the officer to execute and return the writ with an inventory of the property seized, and to retain the same in his hands until final judgment, unless the “ owner, master, steward, consignee, or other agent,” shall give security in double the amount of the demand sworn to, to have the property seized» or double the amount sworn to, forthcoming to answer the judgment.
In section 6 of the act it is provided, that “ upon the return of the writ, the pleadings and other proceedings shall be as in other cases of process served and returned.” Now wliat are these pleadings and proceedings in other cases ? The plaintiff files his declara389] tion against the defendant served with fprocess, not against another person or thing. And to this declaration the defendant files his plea, and so soon as an issue is made up, the case is ready for trial. Who is the defendant served with process in the case before the court? The steamboat f‘Monarch.” And the steamboat “Monarch” was properly made defendant according to the law under which these proceedings were had, so far as we have progressed in the examination of that law. So far in truth there is nothing to excite a reasonable doubt upon the subject. It is true the proceeding is anomalous in the practice of a common law court, but the legislature have power to authorize it, and it is somewhat analogous to proceedings in admiralty courts.
But as we proceed further we shall find difficulties. Section 6 further provides, that “after judgment the property seized-and still held, may be sold upon execution to satisfy the judgment, and if the proceeds of said sale fall short of satisfying the judgment, the balance shall remain to be eollocted on execution as upon other- judgments.” Executions upon other judgments are issued against the judgment debtor, and his property is seized to satisfy the-debt. But in proceedings under this statute, where a creditor elects- to proceed against the “ craft itself,” that craft is defendant. And if the “craft itself ” will, not, at sheriff’s sale, *390 satisfy the judgment, I do not see how the balance can be made by another execution against the same defendant; unless, indeed, it be intended that the “ craft ” shall be sold over and over again until the debt is paid. Such, however, is not the intention. Will it be said that the execution may be considered as against the owner of the boat or craft, and that his property may be taken to satisfy it? This is not the way judgments are enforced by execution in other cases. The owner of the craft is not a party to the suit. He has had no day in court. The plaintiff might have made him a party, but he elected to go “ against the craft itself,” and must abide the consequences.
There is a difficulty, too, in reconciling section 8 with the preceding sections of the act, if we áre right in our construction-This section provides “ that if any suit or action *shall be [390 commenced under this act without reasonable or proper cause, the person or persons commencing such suit or action shall be liable to make compensation to the defendant or defendants for all damages by him, her, or them sustained, by reason of' the commencement of such suit or action; the defendant or defendants, if appearing and defending, and damaged as aforesaid, shall set forth in his, her, or their plea or pleas, or notice attached to the plea of the general issue, that such suit was commenced without reasonable or probable cause, to the damage of the defendant or defendants,” etc. And if, on trial, it shall be found that the action was commenced “without reasonable or probable cause,” the jury are required to assess damages for the defendant or defendants, and judgment is to be entered accordingly. The difficulty with respect to this section does not arise from the fact that the defendant, in a certain state of case, is authorized to recover damages as for a malicious prosecution or vexatious suit, if the action was commenced against him without reasonable or probable cause, but from the fact that the section speaks not only of a defendant, but of defendants, and in such a manner as would seem to imply that these defendants were things animate rather than inanimate. For it is not readily perceived how two steamboats could be joint contractors or joint trespassers. But perhaps the provisions of this section were intended to apply to those cases only where a plaintiff elected to proceed “against the owner or owners of the craft,” rather than “ against the craft itself.” Be this as it may, we do not feel ourselves at liberty, in consequence of anything in *391 this section, to depart from the evident intent of the statute, as expressed, in the preceding sections. And we entertain the opinion that this suit is prosecuted in conformity with tho statute, and that the declaration is sufficient.
The second error assigned is that the judgment of tho court of common pleas was rendered for too great an amount. And in considering this question it becomes necessary to inquire, whether the law of 1840 was intended to have a retrospective or merely a 391] prospective operation. No court will give to *a statute a retrospective operation, unless it is absolutely necessary to carry out the intention of the legislature. The legislature itself has not constitutional power to enact an ex post facto law; and should that body pass a law retrospectively to divest an individual of his previously existing rights, I think this court, as at present constituted, would not enforce it. There is certainly nothing in the act now under consideration which, in the least degree, indicates that it was intended to have a retrospective operation. If it merely gave a new remedy for the recovery of existing debts, it might be enforced. But it does more than this. It makes a steamboat, or other water-craft, liable for debts contracted on its account. Such debts are contracted by the owner of the boat or for his benefit, and he is accountable for them. If debts had been contracted on account of a boat, and subsequently she had changed owners, previous to the j>assage of this act, by giving to it a retrospective operation, we should sacrifice the property of one man to pay the debts of another. The new owner would be charged with debts which he had neither contracted himself, and which had not been contracted for his benefit. This will not do. In our opinion the law only applies to debts which have been contracted, or to causes of action which have accrued since its enactment.
G-iving it this construction, what is the effect upon the case before the court ?
The law took effect on February 26, 1840. The articles furnished by the plaintiff, on account of the boat, subsequent to that date and previous to the commencement of the suit, amounted to only §697.40, while the judgment rendered is §932.66, exceeding what it should havo been by more than §200. Hero is an error, and for this cause the judgment must be reversed with costs, and the case remanded for further proceedings. Judgment reversed.